# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ALISON TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 1:21CV648 |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Alison Taylor brought this action to obtain review of a final decision of the Commissioner of Social Security denying her claim for disability insurance benefits ("DIB") and a period of disability ("POD"). The Court has before it the administrative record and cross-motions for judgment.[1]

## I. PROCEDURAL HISTORY

In 2019, Plaintiff filed an application for a POD and DIB alleging a disability onset date of March 19, 2017. (Tr. 13, 152-55.)[2] The application was denied initially and again upon reconsideration. (Tr. 13, 75-78, 82-89.) After an administrative hearing, the ALJ determined on March 17, 2021, that Plaintiff was not disabled under the Act. (Tr. 13-47.) On June 16,

---

[1] The Commissioner has also filed a motion for leave to file a supporting memorandum that exceeds the normal word limitation, so that she may brief a complex constitutional argument. (Docket Entry 12.) The Court will grant this motion.

[2] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer. (Docket Entry 6.)

2021, the Appeals Council denied Plaintiff's request for review making the ALJ's decision the final decision for purposes of review. (Tr. 1-6.)

## II. STANDARD FOR REVIEW

The scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Review is limited to determining if there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In reviewing for substantial evidence, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The issue before the Court is not whether Plaintiff is disabled but whether the finding that she is not disabled is supported by substantial evidence and based upon a correct application of the relevant law. *Id.*

## III. THE ALJ'S DECISION

The ALJ followed the well-established sequential analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. § 404.1520.[3] *See Albright v. Comm'r of Soc.*

---

[3] "The Commissioner uses a five-step process to evaluate disability claims." *Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012) (citing 20 C.F.R. § 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her [or his] past relevant work; and (5) if not, could perform any other work in the national economy." *Id.* A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. *Id.* at 473. "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the Secretary to produce evidence that other jobs exist in the national economy that the claimant can perform considering his age, education, and work experience." *Hunter*, 993 F.2d at 35 (internal citations omitted).

2

*Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 19, 2017, the alleged onset date. (Tr. 15.) The ALJ next found the following severe impairment(s) at step two: depression. (Tr. 15.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to one listed in, Appendix 1. (Tr. 16.)

The ALJ next set forth Plaintiff's Residual Functional Capacity ("RFC") and determined that she could perform a full range of work at all exertional levels with the following non-exertional limitations:

> She can understand, remember, and carry out short, simple instructions. She can interact appropriately with supervisors on a frequent basis. She can interact appropriately with the general public, peers or coworkers on a frequent basis. She can respond appropriately to changes in the work setting on a frequent basis. She can maintain attention and concentration to stay on task for two-hour intervals over the course of an eight-hour workday. Time off-task during the workday can be accommodated by normal breaks. She can apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. She is capable of dealing with problems involving a few concrete variables in or from standardized situations. She is limited low-stress work environments.

(Tr. 17.) At the fourth step, the ALJ determined that Plaintiff could not perform any of her past relevant work. (Tr. 20.) At step five, the ALJ determined that there were other jobs in the national economy that Plaintiff could perform. (Tr. 21.)

## IV. ISSUES AND ANALYSIS

Plaintiff first contends that "[t]he ALJ erred by failing to identify and obtain a reasonable explanation for the apparent conflict between his findings of fact and jobs cited at

3

Step 5 of the [sequential evaluation process]." (Docket Entry 10 at 4 (bold in original).) Next, Plaintiff contends that "[t]he structure of the SSA is constitutionally invalid." (*Id.* At 7 (bold in original).) Last, Plaintiff contends that "[t]he ALJ's appointment violates the Appointments Clause." (*Id.* At 18 (bold in original).) As explained below, these arguments warrant no relief.

## A. Step Five

As an initial matter, Plaintiff challenges the ALJ's step five analysis. (*Id.* at 4.) To understand why this argument is without merit, it is necessary to understand developments in case law. In 2015, in *Pearson v. Colvin*, the Fourth Circuit Court of Appeals recognized that an ALJ has an affirmative "duty to make an independent identification of apparent conflicts" in vocational expert ("VE") testimony. *Id.* at 208-209, 210. More specifically, in *Pearson*, a VE testified that a claimant was capable of performing three occupations. *Id.* at 210. For each occupation, the Dictionary of Occupational Titles ("DOT") listed frequent reaching as a requirement. *Id.* However, based on VE testimony, the ALJ found that the claimant's nondominant arm could only occasionally reach upward. *Id.* at 206. Based on the DOT's broad definition of reaching (*i.e.*, "[e]xtending hand(s) and arm(s) in any direction") the Fourth Circuit held that the occupations identified by the expert *may* require frequent bilateral overhead reaching. *Id.* at 210-211. The Fourth Circuit went on to explain that an ALJ has an affirmative "duty to make an independent identification of apparent conflicts," regardless of whether a conflict is identified by the VE. *Id.* at 208-209, 210. Because of this apparent conflict between the VE's testimony and the DOT, remand was required so that the ALJ could elicit a reasonable "explanation from the expert as to whether these occupations do, in fact,

4

require frequent bilateral overhead reaching," before relying on the expert's testimony. *Id.* at 208-209, 211.

In 2019, in *Thomas v. Berryhill*, the Fourth Circuit applied the principles articulated in *Pearson* as they related to the DOT's Reasoning Development scale. *See Thomas v. Berryhill*, 916 F.3d 307, 314 (4th Cir. 2019), *as amended* (Feb. 22, 2019). That scale has six levels—Level 1 requires the least reasoning ability and Level 6 requires the most reasoning ability. *See* DOT, App. C, 1991 WL 688702.[4] The DOT assigns a Reasoning Development Level to each occupation identified therein. In *Thomas*, the Fourth Circuit explained:

> An ALJ cannot rely unquestioningly on a VE's testimony. Rather, an ALJ must ensure that any "apparent" conflicts between the Dictionary and the VE's testimony are reasonably resolved. SSR 00-4P, 2000 WL 1898704 at *2. To that end, the ALJ must ask the VE whether his or her testimony conflicts with the DOT. If the answer is "yes," the ALJ "must elicit a reasonable

---

[4] Reasoning levels 1 through 3 are defined as follows:

LEVEL 3

Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations.

LEVEL 2

Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.

LEVEL 1

Apply commonsense understanding to carry out simple one-or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.

U.S. Dept. of Labor, DOT, App. C *available at* 1991 WL 688702.

explanation for the conflict before relying on" the testimony. *Id.* But even if the VE answers "no," the ALJ has an affirmative "duty to make an independent identification of apparent conflicts." *Pearson v. Colvin*, 810 F.3d 204, 210 (4th Cir. 2015). This means that the ALJ must recognize and resolve ways in which a VE's testimony "seems to, but does not necessarily," conflict with the "express language" of the DOT—even if the conflict is not "obvious." *Id.* at 209.

. . . .

The VE's testimony in this case contains a . . . conflict with the DOT [comparable to the one identified in *Pearson*]. After being informed of Thomas's RFC, the VE testified that Thomas was capable of holding three jobs: marker, final inspector, and order caller. [T]he DOT states that all three of the jobs identified by the VE require employees to [perform level 2 reasoning, which requires an employee to] "carry out detailed but uninvolved written or oral instructions . . . ." DOT 209.587-034, 1991 WL 671802; DOT 727.687-054, 1991 WL 679672; DOT 209.667-014, 1991 WL 671807. By comparison, Thomas's RFC limits her to jobs that involve only "short, simple instructions."

We believe that Thomas, being limited to short, simple instructions, may not be able to carry out detailed but uninvolved instructions. This is not a categorical rule—some instructions, particularly if they are well-drafted, may be simultaneously short, simple, detailed, and uninvolved. Even so, the conflict between Thomas's limitation to short, simple instructions and the VE's testimony that Thomas could perform jobs that include detailed but uninvolved instructions is as apparent as the conflict we identified in *Pearson*. Since we held that an apparent conflict existed in *Pearson*, we are satisfied that one exists in this case, too. We remand so that the ALJ can resolve the conflict in accordance with the Administration's regulations.

*Id.* at 313-314.

Consequently, in *Thomas*, the Fourth Circuit held that there was an apparent conflict

between jobs requiring Level 2 reasoning and a limitation to "short, simple instructions." *Id.*

6

This is significant because, prior to *Thomas*, the Fourth Circuit had only addressed this issue as it related to Level 3 reasoning and, even then, only did so in an unpublished opinion. *See Keller v. Berryhill*, 754 Fed. App'x 193, 198 (4th Cir. 2018) ("We therefore conclude that an apparent conflict exists between a limitation to short and simple instructions and Reasoning Development Level 3 occupations."). Since reasoning levels ascend in levels of complexity, *Thomas* therefore stands for the proposition that there is an apparent conflict between jobs requiring Level 2 reasoning, or higher, and a limitation to "short, simple instructions."

Here, Plaintiff argues that because the ALJ's hypothetical question to the VE included that the "individual can understand, remember, and carry out short, simple instructions" (Tr. 44) there was an apparent unresolved conflict between the VE's identification of reasoning level 2 jobs and the DOT (Docket Entry 10 at 4-7). Nevertheless, in this case, the ALJ also included in her hypothetical the limitation that the "individual can apply common sense understanding to carry out detailed but uninvolved written or oral instructions and can deal with problems involving a few concrete variables in or from standardized situations." (Tr. 44.) Because the VE's testimony was in response to the entire hypothetical, not a portion of it (Tr. 43-45), there was no apparent conflict between his testimony and the DOT. Therefore, the ALJ reasonably relied on the VE's testimony, and her step five finding was supported by substantial evidence.

Beyond this, the ALJ's inclusion—in both the hypothetical to the VE and the RFC— of an ability to "apply common sense understanding to carry out detailed but uninvolved written or oral instructions and can deal with problems involving a few concrete variables in

7

or from standardized situations" (Tr. 17, 44) mirrors the DOT's definition of reasoning level 2. *See* DOT, *Appendix C – Components of the Definition Trailer*, 1991 WL 688702 (defining Level 2 as "Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations."). That is precisely what the counter-supply worker job, identified by the VE, requires. (Tr. 45.) *See* DOT No. 319-687-010, 1991 WL 672772 (counter-supply worker job is a reasoning level 2 job). Therefore, there was no apparent conflict between the VE's testimony that the hypothetical individual could perform the job of counter-supply worker and the DOT, and the ALJ properly found Plaintiff remained capable of performing this job. (Tr. 21.) *See Troy B. v. Comm'r, Soc. Sec. Admin.*, No. CV DLB-19-325, 2019 WL 6684498, at *3 (D. Md. Dec. 6, 2019) (finding no error where hypothetical and RFC included ability to "apply common sense understanding to carry out detailed uninvolved instructions," which follows DOT's definition of reasoning level 2, and VE identified reasoning level 1 and 2 jobs).

Therefore, unlike in *Thomas*, where the ALJ's hypothetical did not include the DOT's reasoning level 2 definition, here, the ALJ's hypothetical in this case did. (Tr. 44.) Additionally, this is not a case where the ALJ's nonexertional limitations were presented to the VE in varying hypotheticals by piecemeal. Here, the ALJ's limitations to "short, simple instructions" and "apply common sense understanding to carry out detailed but uninvolved written or oral instructions and can deal with problems involving a few concrete variables in or from standardized situations" were presented together in one hypothetical. (Tr. 44.) A plain reading of the administrative hearing transcript reveals that the VE responded to the entire

8

hypothetical. (Tr. 43-45.) Therefore, *Thomas* is inapposite because the finding of an apparent conflict in that case was not based on a hypothetical that included the DOT's reasoning level 2 definition.

Plaintiff argues that the ALJ's inclusion of the DOT's reasoning level 2 definition in her hypothetical "does not fix the conflict here as the other portions of the RFC seem to be more limiting than the ALJ's proposed reasoning level." (Docket Entry 10 at 6.) This is not a persuasive argument. The substantial evidentiary basis of the step five finding is not eroded by the fact that the ALJ also included in her hypothetical and RFC finding that the individual could understand, remember, and carry out short, simple instructions. If the hypothetical individual can "apply commonsense understanding to carry out detailed but uninvolved written or oral instructions and with problems involving a few concrete variables in or from standardized situations," she can also understand, remember, and carry out short, simple instructions.[5]

Plaintiff correctly points out that the job of linen room attendant the ALJ concluded

---

[5] *See, e.g., Allison P. v. Berryhill*, No. 2:18-CV00061-JHR, 2019 WL 1373646, at *6 (D. Me. Mar. 24, 2019) ("[A] person capable of performing work at GED reasoning level 2 would also be capable of performing work at the lower level of GED reasoning level 1."); *Carringer v. Colvin*, No. 2:13-CV-00027-MOC, 2014 WL 1281122, at *4 (W.D.N.C. Mar. 27, 2014) ("Plaintiff further argues that the ALJ erred in relying on the VE's testimony that plaintiff could perform tasks at level 1 and level 2 reasoning fails as a matter of logic as the reasoning levels are progressive, not regressive, making a person who functions at level 3 very capable of performing jobs at the lesser levels of 1 and 2, as an RFC determination describes the 'most [an individual] can still do despite [her] limitations,' not the least she can do. 20 C.F.R. § 416.945."). *Compare* 20 C.F.R. § 404.1567(e) (noting that if a person can do very heavy work, she can also do jobs at the less demanding exertional levels of heavy, medium, light, and sedentary work). *See also Troy B.*, 2019 WL 6684498, at *3-4 (upholding step five finding where ALJ relied on VE's identification of reasoning level 1 and 2 jobs in response to hypothetical that mirrored DOT's definition of reasoning level 2).

9

she could perform (Tr. 21) is a reasoning level 3 job. (Docket Entry 10 at 7.) DOT No. 222.387-030, 1991 WL 672098. As the court noted in *Troy B.*, "[a]rguably, the ALJ should have made further inquiries of the VE to determine whether a conflict existed between Plaintiff's RFC and a job requiring a Reasoning Level of 3." 2019 WL 6684498, at *3. However, any error is harmless because other identified representative occupations required only reasoning level 2.[6] *Id.*; *see also Hodge v. Saul*, No. 1:18CV206, 2019 WL 3767130, at *4 (M.D.N.C. Aug. 9, 2019) (Peake, M.J.), *report and recommendation adopted*, No. 1:18CV206, 2019 WL 4538736 (M.D.N.C. Sept. 19, 2019) (Schroeder, J.) (upholding decision even though ALJ did not identify apparent conflict or ask VE for reasonable explanation for two of three jobs identified because there was no unresolved conflict for at least one identified job).

Moreover, Plaintiff does not challenge (and has therefore waived) the substantial evidentiary basis of the ALJ's RFC assessment. In other words, there is no dispute regarding the finding that she is capable of performing reasoning level 2 jobs. The hearing hypothetical and RFC describe reasoning level 2 jobs, the VE identified reasoning level 2 jobs, and the ALJ found Plaintiff capable of performing a reasoning level 2 job. ((Tr. 17, 21, 43-45) (VE testified there were approximately 90,000 countersupply worker jobs in national economy).) Therefore, the step five finding is supported by substantial evidence. *See* 42 U.S.C. § 423(d)(2)(A) (stating that a claimant is not disabled if she is able to engage in "work which exists in significant

---

[6] In addition to the counter-supply worker job, the VE identified three other reasoning level 2 jobs that the hypothetical individual could perform: (1) lens block gauger, DOT No. 716.687-030, 1991 WL 679466; (2) checker, DOT No. 222.687-010, 1991 WL 672130; and (3) marker, DOT No. 209.587-034, 1991 WL 671802. (Tr. 45.)

10

numbers either in the region where [the claimant] lives or in several regions of the country.");

*Dunivant v. Saul*, No. 1:19CV923, 2021 WL 620711, at *5 (M.D.N.C. Feb. 17, 2021) (citations

omitted). Although it might have been more straightforward for the ALJ to exclude "short,

simple instructions," from the hypothetical and RFC, doing so was not error, and it does not

undermine her step five finding because she also included the ability to perform reasoning

level 2 jobs. *See Allison P.*, 2019 WL 1373646, at *6 ("While her inclusion of language from

GED reasoning level 1 in her RFC determination is superfluous, it is not illogical. It merely

makes explicit what is implicit in the progressive structure of the GED reasoning levels: that

a person capable of performing work at GED reasoning level 2 would also be capable of

performing work at the lower level of GED reasoning level 1."). This objection has no merit.

## B. The Constitutionality of the Agency

Plaintiff's second argument, in its entirety, is as follows:

> The United States Supreme Court has held that it is
> unconstitutional for an executive agency to be led by a single
> individual who serves for a longer term than the President and
> can only be removed from his position for cause. *Seila Law*, 591
> U.S. ---, 140 S.Ct. at 2197. This constitutionally invalid structure
> of the CFPB is identical to that of the SSA. The Commissioner
> of SSA is the singular head of the Agency, serves for a six-year
> term, and cannot be removed by the President except for cause
> ("neglect of duty or malfeasance in office"). *See* 42 U.S.C. §
> 902(a)(3). As the Supreme Court observed, the "insulation from
> removal by an accountable President is enough to render the
> agency's structure unconstitutional." *Seila Law*, 140 S.Ct. at 2204.
> For this same reason, SSA's structure is unconstitutional as it
> violates the separation of powers with the Commissioner of SSA
> insulated from democratic accountability.

> The government deprived this claimant of a valid
> administrative adjudicatory process. Under 42 U.S.C. § 405(b)(1),

11

only the Commissioner of SSA can make findings of fact and issue final decisions as to benefits eligibility. *See also* 42 U.S.C. § 902. The ALJ's delegation of authority in this case came from Andrew Saul and is therefore constitutionally defective. *See* HALLEX I-2-0-2(A) (explaining that an ALJ's authority to hear and decide a case is delegated from the Commissioner of SSA). Similarly, the ALJ decided this case under regulations promulgated by Mr. Saul when Mr. Saul had no constitutional authority to issue those rules. All of this is just as true with respect to SSA's Appeals Council judges. Accordingly, a presumptively inaccurate legal standard was utilized to adjudicate this disability claim at the administrative level.

In *Carr*, 141 S.Ct. 1352, 1361-62 (Apr. 22, 2021), the Supreme Court held that an SSA disability claimant does not forfeit constitutional challenges by not raising them before the SSA. Rather, they can be raised in federal court for the first time as SSA proceedings are informal and non-adversarial rendering administrative issue exhaustion of such challenges inappropriate. *See id.* at 1359-61.

Therefore, the ALJ's decision must also be vacated because she did not have the authority to hear or decide the case given the delegation of authority from a Commissioner who had no constitutional authority to head the Agency. Upon remand, the case should be heard and decided de novo by an ALJ who does not suffer from the same constitutional defect. *See Lucia*, 585 U.S. - --, 138 S.Ct. at 2053-55; *see generally Carr*, 141 S.Ct. 1352.

(Docket Entry 10 at 7-8.)

The Commissioner, in opposition, contends that

The parties agree that 42 U.S.C. § 902(a)(3) violates the separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without cause. *See* Office of Legal Counsel, U.S. Dep't of Justice, Constitutionality of the Commissioner of Social Security's Tenure Protection, 2021 WL 2981542 (July 8, 2021) ("OLC Op."). But without more, that conclusion does not support setting aside an unfavorable SSA disability benefits determination. As the Supreme Court

12

explained this past term in *Collins v. Yellen*, 141 S. Ct. 1761, 1787-89 (2021), even where an unconstitutional statutory removal restriction exists, a plaintiff seeking relief on that basis must show that the restriction actually caused her harm. Plaintiff cannot make such a showing, and therefore her request for a remand should be rejected.

(Docket Entry 14 at 18.)

The undersigned agrees with the other judges from this Court who have considered this issue at considerable length and concluded that the Commissioner has the better argument here. More specifically, Plaintiff's *Seila Law/Collins* argument falls short, because while the parties are in agreement that Section 902(a)(3) violates the separation of powers, Plaintiff has failed to demonstrate any actual harm arising from Section 902(a)(3). *See, e.g.*, *Brooks v. Kijakazi*, No. 1:21CV609, 2022 WL 2834345, at *9 (M.D.N.C. July 20, 2022) (Auld, M.J.) (concluding that no remand was in order where claimant "cannot show the required nexus between the removal restriction he challenges and the denial of his benefits claim") (citation and internal quotations omitted); *Hutchens v. Kijakazi*, No. 1:20CV1124, 2021 WL 5834409, at *10-13 (M.D.N.C. Dec. 9, 2021) (Auld, M.J.) (concluding that no remand was warranted absent actual harm to claimant arising from Section 902(a)(3)'s removal provision), *report and recommendation adopted*, 2022 WL 1441227 (M.D.N.C. Jan. 5, 2022) (Eagles, J.); *see also Katrina R. v. Comm'r of Soc. Sec.*, No. 2:21-CV-4276, 2022 WL 190055, at *5 (S.D. Ohio Jan. 21, 2022) ("Here, Plaintiff has made no showing of any possible compensable harm flowing from § 902(a)(3). Nor is it likely Plaintiff could, because the President's choice of Social Security Commissioner has very little impact on the result of any particular ALJ or Appeals Council decision. Indeed, courts across the country have uniformly concluded that the allegedly unconstitutional nature of §

902(a)(3) does not require remand.") (internal citation and quotation omitted) (collecting cases); *Juliana Jolean A. v. Kijakazi*, No. 5:20-CV-1268 (BKS), 2022 WL 595361, at *4 (N.D.N.Y. Feb. 28, 2022) ("Plaintiff has not alleged any connection between the removal restriction and the unfavorable decision denying her claim for benefits. She therefore has not alleged that the unconstitutional removal restriction itself inflicted compensable harm. Courts considering similar challenges have uniformly rejected requests for remand.") (internal citation and quotation omitted) (collecting cases). Simply put, Plaintiff's second assignment of error does not entitle her to relief.

Plaintiff's arguments to the contrary are not persuasive. In her response, Plaintiff contends for a number of reasons that harm is presumed "[g]iven that this case involves a structural constitutional claim implicating separation of powers" and "because the instant separation of powers challenge involves government actors exercising power that they did not lawfully possess[.]" (Docket Entry 10 at 13-15.) However, this argument is not persuasive. *See Brooks*, No. 1:21CV609, 2022 WL 2834345, at *9 (rejecting similar argument because "the unconstitutional removal provision at issue here did *not* impact then-Commissioner Saul's ability to carry out the duties of his office"); *see also Collins*, 141 S. Ct. at 1789 (requiring showing that "unconstitutional provision [ ] inflict[ed] compensable harm").

Nevertheless, Plaintiff also contends that even if harm is not presumed, she was still harmed in the following ways:

> The first injury the claimant suffered is that she did not receive a constitutionally valid hearing and adjudication from an ALJ to which she was entitled. The second injury the claimant suffered is that she did not receive a constitutionally valid decision from an

14

ALJ to which she was entitled. The third injury the claimant suffered is that she received an unfavorable decision from this constitutionally illicit ALJ adjudication process. The fourth injury the claimant suffered is that she did not receive a constitutionally valid adjudication process from SSA's Appeals Council to which she was entitled. The fifth injury the claimant suffered is that she did not receive a constitutionally valid determination by the Appeals Council to which she was entitled. The sixth injury the claimant suffered is that she received an unfavorable determination from this constitutionally illicit Appeals Council adjudication process.

(Docket Entry 10 at 11-12.) Plaintiff also cites to a number of sources in support of an

additional argument that she was harmed here because President Biden wished to terminate

Commissioner Saul upon assuming the presidency. (*Id.* at 16-18.) However, Plaintiff has failed

to demonstrate how any of this actually impacted her claims. Again, Plaintiff has failed to show

how or why Section 902(a)(3) harmed her. *See Brooks*, 2022 WL 2834345, at *9 (rejecting similar

arguments on identical grounds). In short, Plaintiff's arguments of harm are vague, conclusory,

and unsupported. This objection has no merit.

## C. Appointments Clause

Plaintiff's final argument, in its entirety, is as follows:

Plaintiff now also raises a challenge to the unconstitutional appointment of the ALJ who heard her case and issued a denial of her claim for benefits. This is a distinct challenge from the separation of powers challenge involving the unconstitutional structure of the Agency and the Commissioner's illicit delegation of authority discussed above. *See supra.*

The ALJ's appointment by Nancy Berryhill on July 16, 2018 (*see* SSR 19-1p), violates the Appointments Clause because Nancy Berryhill was no longer the Acting Commissioner on that date and, therefore, lacked the authority to ratify the ALJ's appointment. Nancy Berryhill, previously the Deputy

15

Commissioner of Operations ("DCO"), became the Acting Commissioner of SSA on January 20, 2017, when President Donald Trump assumed office and then Acting Commissioner Carolyn Colvin resigned. *See* Violation of the 210-day Limit Imposed by the Vacancies Reform Act of 1998- Commissioner, Social Security Administration, Mar. 6, 2018, at 1, https://www.gao.gov/assets/700/690502.pdf [*10] ("GAO Report").

The Federal Vacancies Reform Act ("FVRA") explains that an individual serving as an acting officer of the United States may do so for no longer than 210 days beginning on the date the vacancy occurs (5 U.S.C. § 3346(a)(1)), or for no longer than 210 days from the date of submission of a first or second nomination for the office to the Senate (5 U.S.C. § 3346(a)(2)).

On March 6, 2018, the GAO reported that Berryhill's service as Acting Commissioner under the FVRA had expired on November 16, 2017, and that her service after that date violated the FVRA. GAO, at 2. The GAO Report stated Berryhill could not use "Acting Commissioner" as her title but could - as DCO - continue to perform *delegable* functions and duties of the Commissioner's position. *Id.* Thereafter, on April 17, 2018, President Trump nominated Andrew Saul to be SSA's Commissioner.

Thus, Berryhill's purported ratification of the ALJ in this case on July 16, 2018 was statutorily ineffective because her period of acting service had expired on November 16, 2017, and the FVRA did not allow her to resume acting as Commissioner at a later date. As one district court recently observed:

> Berryhill was "the person serving as an acting officer" from January 20, 2017 until November 16, 2017 when her term expired. When Saul was first nominated to become Commissioner on April 17, 2018, Berryhill was not then serving as Acting Commissioner and Saul's nomination did not create a new vacancy. Therefore, by its plain language, § 3346(a)(2) does not apply to Berryhill because she was not serving as Acting Commissioner when Saul was nominated.

16

*Brian T.D. v. Kijakazi*, No. 19-cv-2542-DTS, 2022 U.S. Dist. LEXIS 10690, *31-32 (Jan. 20, 2022 D. Minn.).

Additionally, as previously noted, the SSA statutory restriction on the President's removal authority does not apply merely to the confirmed head of SSA but also more broadly to "[a]n individual serving in the Office of Commissioner." *See* 42 U.S.C. § 902(a)(3). Thus, the statute appears to offer removal protection not merely to the confirmed Commissioner of SSA but also to any individual serving in that office, including for an individual serving in an acting capacity for the time allowed under the law. *Accord Sylvia*, [*v. Kijakazi*, 2021 WL 4692293,] *3 [(N.D. Tex. Sep. 13, 2021)]; *Albert* [*v. Kijakazi*, 2021 3424268,] *3 [(D. Alaska Aug. 5, 2021)]; *Tafoya* [*v. Kijakazi*, 2021 WL 3269640,] *5 [(D. Col. Jul. 29, 2021)]; *Dante* [*v. Saul*, 2021 WL 2936576,] *8 [(D.N.M. Jul. 13, 2021)]. This would mean that, even if Nancy Berryhill were acting appropriately under FVRA, her actions would still be *ultra vires* because of the unconstitutional removal protections.

The appropriate remedy when the ALJ lacked a proper appointment from a constitutional commissioner in violation of the Appointments Clause is to remand the matter to a different and properly appointed official – and notably, harm is presumed when an ALJ lacks a proper appointment. *See Carr*, 141 S.Ct. 1352; *Lucia*, 138 S.Ct. 2044; *Probst* [*v. Saul*], 980 F.3d [1015,] 1023 [(4th Cir. 2020)].

(Docket Entry 10 at 18-20.)

Once again, however, the undersigned agrees with the other judges from this Court, Circuit, and others who have considered this issue at considerable length and concluded that this appointment clause argument has no merit. As another judge in this Circuit has explained:

The FVRA prescribes time limits for acting service in 5 U.S.C. § 3346. An acting official serving under the FVRA may serve "for no longer than 210 days beginning on the date the vacancy occurs; or . . . once a first or second nomination for the office is submitted to the Senate, from the date of such nomination for

17

the period that the nomination is pending in the Senate." 5 U.S.C. § 3346(a)(1)-(2). For vacancies existing during the first 60 days after a Presidential transition (as occurred in 2017), the 210-day period runs from the later of 90 days after inauguration or 90 days after the date of the vacancy. *Id.* § 3349a(b). If a first nomination does not result in a confirmation, an acting official may serve for another 210 days (§ 3346(b)(1)), and during the pendency of a second nomination (§ 3346(b)(2)(A)). If the second nomination fails, then an acting official may serve for another 210 days (§ 3346(b)(2)(B)).

The FVRA also provides an enforcement provision in 5 U.S.C. § 3348. "Unless" an acting official "is performing the functions and duties" of the vacant office "in accordance with sections 3345, 3346, and 3347," the "office shall remain vacant" and only the head of the agency may perform the non-delegable duties of the vacant office. 5 U.S.C. § 3348(b)(1)-(2).

Nancy Berryhill, then the Deputy Commissioner of Operations for SSA, was designated Acting Commissioner on January 21, 2017, and served until November 16, 2017, when the initial 210-day period for acting service expired. On April 17, 2018, President Trump nominated Andrew Saul to be the Commissioner of SSA. Upon submission of the nomination, Ms. Berryhill resumed her service as Acting Commissioner during the nomination's pendency pursuant to 5 U.S.C. § 3346(a)(2), and served until Mr. Saul was sworn in as Commissioner. On July 16, 2018, Acting Commissioner Berryhill ratified the appointments of all SSA ALJs and approved them as her own.

Plaintiff urges the Court to rely on *Brian T.D. v. Kijakazi*, No. 19-cv-2542 (DTS), 2022 WL 179540 (D. Minn. Jan. 20, 2022), *appeal filed*, No. 22-1601 (8th Cir. Mar. 22, 2022), in which a district court concluded that because the initial 210-day acting service period lapsed before the submission of Mr. Saul's nomination in April 2018, Ms. Berryhill could not serve as Acting Commissioner during the pendency of his nomination and thus could not lawfully ratify and approve the appointments of SSA ALJs as her own. *Brian T.D.*, however, is an outlier that conflicts with the plain text of the FVRA, nearly every other court to address the issue, as well as the views of the Executive Branch and Legislative Branch—all of which agree that § 3346(a)(2)

18

permits an acting official serving under the FVRA to serve during the pendency of a first or second nomination even when that nomination was submitted after the initial 210-day period for acting service has expired.

Statutory interpretation "begins with the text." *Ross v. Blake*, 578 U.S. 632, 638 (2016). Here, the text of § 3346(a)(2) is plain. Section 3346(a) provides that an acting official who is serving under the FVRA may serve "for no longer than 210 days" from the date of the vacancy, "*or*," 5 U.S.C. § 3346(a)(1) (emphasis added), "once a first or second nomination for the office is submitted to the Senate . . . for the period that the nomination is pending in the Senate." *Id.* at § 3346(a)(2). By using the disjunctive "or," the FVRA provides for acting service during either or both of two periods: (1) for 210 days after the vacancy, or (2) during the pendency of a first or second nomination. It provides a single trigger for permissible service during a first or second nomination's pendency: the submission of the nomination. Thus, under § 3346(a)(2)'s plain text, "once" Mr. Saul's "nomination for the office" of Commissioner "[wa]s submitted to the Senate," Ms. Berryhill could serve "for the period that the nomination [wa]s pending in the Senate." *Id.*

Tellingly, the actual text of the statute does not mention any requirement that a nomination be submitted within the initial 210-day period. The statute simply says that "*once* a first or second nomination . . . is submitted," the acting official designated under the FVRA may serve "for the period that the nomination is pending." 5 U.S.C. § 3346(a)(2) (emphasis added). Congress certainly could have chosen to condition such service on the submission of a nomination within 210 days, but it did not. The Court must "resist reading words . . . into a statute that do not appear on its face." *Dean v. United States*, 556 U.S. 568, 572 (2009) (cleaned up).

The great majority of courts that have addressed this issue agree that § 3346(a)(2) "contains a 'spring-back' provision that enabled Ms. Berryhill to resume her role as Acting Commissioner as of the date that Andrew Saul was nominated for Commissioner in April 2018." *Thomas S. v. Comm'r*, No. C21-05213-MAT, 2022 WL 268844, at *3 n.2 (W.D. Wash. Jan. 28, 2022); *see also Reuter v. Saul*, No. 19-CV-2053-LRR, 2020 WL 7222109, at *15 n.11 (N.D.

19

Iowa May 29, 2020), *adopted by* 2020 WL 6161405, at *6 (N.D. Iowa Oct. 21, 2020); *Nw. Immigrant Rts. Proj. v. U.S. Citizenship & Immigr. Servs.*, 496 F. Supp. 3d 31, 57-58 (D.D.C. 2020) (although "far more than 210 days passed" after resignation of permanent official before submission of nomination, a "separate provision of the FVRA permits an acting official to serve 'from the date of' a first nomination for the vacant office and 'for the period that the nomination is pending in the Senate,' " such that acting official could "lawfully serv[e] as Acting Secretary" upon submission of nomination).[3]

> [3]*Accord Donta J. v. Saul*, No. 2:20-cv-131-RGD-DEM, 2021 WL 3705145, at *7 (E.D. Va. Apr. 2, 2021), *adopted by* 2021 WL 2711467 (E.D. Va. Jul. 1, 2021); *Austin v. Saul*, No. 19-CV-3017-CJW, 2020 WL 5229540, at *16 n.7 (N.D. Iowa May 12, 2020), *adopted by* 2020 WL 3100838 (N.D. Iowa June 11, 2020); *Heins v. Saul*, No. 19-CV-2043-LTS, 2020 WL 6052583, at *21 n.18 (N.D. Iowa June 11, 2020), *adopted by* 2020 WL 4369450 (N.D. Iowa July 30, 2020); *Taylor v. Saul*, No. 1:16-cv-00044, 2019 WL 3837975, at *4 (W.D. Va. Aug. 15, 2019); *Mark F. v. Berryhill*, No. 1:18-cv-02031-MJD-TWP, 2019 WL 1055098, at n.2 (S.D. Ind. Mar. 6, 2019); *Vickie H. v. Berryhill*, No. 1:18-cv-00351-SEB-DLP, 2019 WL 1370700, at n.2 (S.D. Ind. Mar. 1, 2019), *adopted by* 2019 WL 1367537 (S.D. Ind. Mar. 26, 2019); *Charles K. v. Berryhill*, No. 1:18-cv-02013-JPH-DML, 2019 WL 667760, at n.2 (S.D. Ind. Feb. 15, 2019); *Lopez Davila v. Berryhill*, No. 17-cv-12212-ADB, 2018 WL 6704722, at *1 n.1 (D. Mass. Nov. 6, 2018); *Patterson v. Berryhill*, No. 2:18-cv-00193, 2018 WL 8367459, at *1 (W.D. Pa. June 14, 2018); *but see Richard J.M. v. Kijakazi*, No. 19-cv-827, 2022 WL 959914 (D. Minn. Mar. 30, 2022) (following *Brian T.D.*). Magistrate Judge Schultz has also ordered remands in two additional cases, incorporating by reference his ruling in *Brian T.D.*

Moreover, the legislative history and the views of the Executive Branch and Legislative Branch confirm that § 3346(a)(2) serves

20

as a spring-back provision. The Senate Report accompanying the bill that became the FVRA explained that "[u]nder new section 3346(a)(2)," an acting officer could serve for 150 days and "may serve while that nomination is pending . . . *even if the nomination is submitted after the 150 days has passed*." S. Rep. No. 105-250, at 14 (1998) (emphasis added). By contrast, "between the 151st day and the day the nomination is submitted," the office must remain vacant. *Id.* at 14; *see also id.* at 18. The Executive Branch has understood § 3346(a)(2) to operate this way since the FVRA's enactment. *See Guidance on Application of Federal Vacancies Reform Act of 1998*, 23 Op. O.L.C. 60, 68 (1999) (FVRA "permits an acting officer" to serve "again upon the submission of a nomination, even if the 210-day period expired before that nomination was submitted").

The Government Accountability Office—a non-partisan agency within the legislative Branch specifically tasked by Congress with monitoring the Executive Branch's compliance with § 3346 also agrees. *See, e.g., Violation of the 210-Day Limit Imposed by the Federal Vacancies Reform Act of 1998—Department of Energy, Director of Office of Science*, B-328888 (GAO Mar. 3, 2017) (acting official whose initial 210-days had expired "could resume her service . . . when the President submitted [a] nomination to the Senate"), *https://www.gao.gov/assets/b-328888.pdf*. Thus, the Executive and Legislative Branches agree that § 3346(a)(2) permits acting service during the pendency of a first or second nomination without regard to when the nomination is submitted.

Based upon the foregoing, the Court is persuaded that the Plaintiff's argument is without merit.

*Williams v. Kijakazi*, No. 1:21-CV-141-GCM, 2022 WL 2163008, at *2-4 (W.D.N.C. June 15, 2022); *see also Brooks v. Kijakazi*, No. 1:21CV609, 2022 WL 2834345, at *23 (M.D.N.C. July 20, 2022) (Auld, M.J.) ("[T]he plain language of Section 3346(a) of the FVRA makes clear that Section 3346(a)(2) provided authority for Berryhill to resume service as Acting Commissioner as of the date of President Trump's nomination of Saul for Commissioner on April 17, 2018. Further, the FVRA's legislative history, caselaw interpreting Section 3346(a)(2), and

21

interpretations of that Section from the DOJ and the GAO all support the interpretation of Section 3346(a)(2) as a spring-back provision. As such, the Court should find that Berryhill lawfully ratified the SSA's ALJs' appointments as her own on July 16, 2018, and thus that Plaintiff's third issue on review fails as a matter of law."). The Court finds this reasoning persuasive. Consequently, Plaintiff's third objection should be denied.

## V. CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is legally correct, supported by substantial evidence, and susceptible to judicial review. Accordingly, the Court **GRANTS** the Commissioner's motion for leave to file excess pages (Docket Entry 12) and **RECOMMENDS** that Plaintiff's Motion for Judgment (Docket Entry 9) be **DENIED**, Defendant's Motion for Judgment on the Pleadings (Docket Entry 13) be **GRANTED**, and the final decision of the Commissioner be upheld.

Joe L. Webster
United States Magistrate Judge

August 2, 2022
Durham, North Carolina